### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RONALD A. NORVELLE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. CIV-07-710-AR** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of the Social** | ) | |
| **Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income benefits. The parties have consented to proceed before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(c). The Commissioner has answered and filed the administrative record (hereinafter Tr. __). As the parties have briefed their positions, the matter is at issue. For the following reasons, the decision of the Commissioner is affirmed.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for supplemental security income benefits on March 19, 2003, alleging a disability onset date of March 19, 2003, caused by kidney problems, sleep apnea, heart problems, knee pain, urinary tract problems, mental stress, and

shortness of breath.  Tr. 51, 52-53, 61.[1]  The application was denied on initial consideration

and on reconsideration at the administrative level.  Tr. 29, 30, 31-33, 35-36.  Pursuant to

Plaintiff's request, a hearing was held before an administrative law judge on April 27, 2005.

Tr. 37, 868-93.  Plaintiff appeared in person with an attorney, and offered testimony in

support of his application.  Tr. 870, 873-89.  At the request of the administrative law judge,

a vocational expert also appeared and testified.  Tr. 45-48, 889-93.  The administrative law

judge issued her decision on September 21, 2005, finding that Plaintiff was not disabled

within the meaning of the Social Security Act, and thus he was not entitled to benefits.  Tr.

19-21, 22-27.  The Appeals Council denied Plaintiff's request for review on March 13, 2007,

and, thus, the decision of the administrative law judge became the final decision of the

Commissioner.  Tr. 11-13.

## II.  STANDARD OF REVIEW

The Tenth Circuit Court of Appeals has summarized the applicable standard of review

as follows:

> We review the agency's decision to determine whether the factual findings are
> supported by substantial evidence in the record and whether the correct legal
> standards were applied. Substantial evidence is such relevant evidence as a
> reasonable mind might accept as adequate to support a conclusion.  However,
> a decision is not based on substantial evidence if it is overwhelmed by other
> evidence in the record or if there is a mere scintilla of evidence supporting it.
> The agency's failure to apply correct legal standards, or show us it has done
> so, is also grounds for reversal.  Finally, because our review is based on the
> record taken as a whole, we will meticulously examine the record in order to

---

[1] Plaintiff amended his disability onset date to March 19, 2003, at his administrative hearing.
Tr. 871.

> determine if the evidence supporting the agency's decision is substantial, taking into account whatever in the record fairly detracts from its weight. However, we may neither reweigh the evidence nor substitute our discretion for that of the Commissioner.

Hamlin v. Barnhart,  365 F.3d 1208, 1214 (10th Cir. 2004) (internal quotations and citations omitted). To determine whether a claimant is disabled, the Commissioner employs a five-step sequential evaluation process.  20 C.F.R. § 416.920; Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).  The claimant bears the burden to establish a prima facie case of disability at steps one through four.  Williams, 844 F.2d at 751 and n.2.  If the claimant successfully carries this burden, the burden shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity to perform work in the national economy given the claimant's age, education, and work experience.  Id. at 751.

## III.  THE ADMINISTRATIVE LAW JUDGE'S DECISION

In determining that Plaintiff was not disabled, the administrative law judge followed the sequential evaluation process set forth in 20 C.F.R. § 416.920.  Tr. 25-26.  She first found that Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision, and so she proceeded to the next steps in the sequential analysis.  Tr. 22, 25.  At steps two and three, the administrative law judge found that the medical evidence indicated that Plaintiff suffers from coronary artery disease, diabetes, sleep apnea, a history of kidney stones and renal insufficiency, and generalized degenerative joint disease, and that his impairments were severe but not severe enough to meet or equal one of the impairments listed in 20 C.F.R. Part 404, Appendix 1, Subpart P, Social Security Regulations, No. 4.  Tr.

Tr. 22, 25.  The administrative law judge next found that Plaintiff has the physical residual functional capacity to perform a wide range of light work but is precluded from performing a full range of light work by his need to avoid more than occasional climbing, balancing, kneeling, crouching, and crawling, unprotected heights, hazardous machinery, commercial driving, and that he had an inability to engage in more than occasional overhead reaching with his right upper extremity.  Tr. 24-26.  Based on this residual functional capacity assessment, the administrative law judge found at step four of the sequential evaluation process that Plaintiff was not able to perform his past relevant work.  Tr. 25-26. Considering Plaintiff's age, education, experience, residual functional capacity, the testimony of the vocational expert, and Medical-Vocational Rules 202.14 and 202.15 as a framework, the administrative law judge concluded that there are other jobs in the national economy which exist in significant numbers that Plaintiff can perform.  Tr. 25-26.  Accordingly, the administrative law judge found that Plaintiff was not disabled and she denied Plaintiff's application.  Tr. 25-27.

## IV.  PLAINTIFF'S ARGUMENTS ON APPEAL

Plaintiff raises three issues on appeal.  He contends the administrative law judge failed to recognize all of his diagnosed impairments at step two as severe.  Plaintiff's Opening Brief, p. 7-10.  As his second point of error, Plaintiff contends the administrative law judge's residual functional capacity assessment is erroneous because it failed to include all of his limitations.  Id. at 10-13.  Finally, Plaintiff contends the administrative law judge made an improper credibility assessment.  Id. at 14-15.

4

## V.  DISCUSSION

### A.      Step Two Determination

In connection with his first claim on appeal, Plaintiff argues the administrative law judge erroneously failed to include his depression and tremors as severe impairments at step two.  Plaintiff's Opening Brief, p. 7.  Explaining that his burden to demonstrate that an impairment is severe is *de minimus*, he points to several entries in his medical records which document the existence of his depression and tremors.  Id. at 9-10.  Plaintiff contends the administrative law judge's findings are based upon a misreading or misrepresentation of the administrative record and that the administrative law judge insufficiently explained her reasons for concluding that his depression and tremors were not severe impairments, and failed to discuss evidence that conflicted with her findings.  Id. at 8-10.

The Commissioner argues that Plaintiff failed to meet his step two burden to show his depression had a vocationally limiting impact.  Response Brief, p. 3-4.  The Commissioner further notes that the majority of the records upon which Plaintiff relies were generated prior to his alleged onset date and that there are few records pertaining to his depression after the alleged onset date.  What records do relate to Plaintiff's depression after his alleged onset date, according to the Commissioner, do not indicate it was a vocationally limiting condition.  Id. at 4-7.  Similarly, as to Plaintiff's tremors, the Commissioner contends Plaintiff has not shown that his tremors have a vocationally significant impact.  Id. at 7.

Plaintiff's argument is squarely addressed in the recent Tenth Circuit case of Brescia

v. Astrue, 07-4234, 2008 WL 2662593 (10th Cir. July 8, 2008).[2] There, the administrative law judge found that the claimant had certain severe impairments at step two of the sequential evaluation process but on appeal, the claimant argued that the administrative law judge erred by not accepting other of her impairments as severe. Id. at *1. Quoting from Oldham v. Astrue, 509 F.3d 1254, 1256 (10th Cir. 2007), the Court stated that "[w]e can easily dispose of" the claimant's argument because "[t]he [administrative law judge]... made an explicit finding that [the claimant] suffered from severe impairments" and "[t]hat was all the [administrative law judge] was required to do in that regard." Id. *2. The Court went on to explain that once an administrative law judge finds that a claimant has at least one severe impairment, a failure to designate another disorder as "severe" at step two does not constitute reversible error because under the Commissioner's regulations, the administrative law judge must consider the combined effects of all the claimant's impairments at later steps in the sequential evaluation process. Id. While Brescia effectively addresses Plaintiff's first issue on appeal, the Court will discuss Plaintiff's medical records on these two alleged impairments, as the records will be relevant in addressing Plaintiff's second issue on appeal.

At step two, a claimant must prove the existence of a medically severe impairment or combination of impairments that significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. § 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs," including, "[u]nderstanding, carrying out, and remembering

---

[2] This and any other unpublished disposition cited as persuasive authority pursuant to Tenth Circuit Rule 32.1.

simple instructions; [u]se of judgment; [r]esponding appropriately to supervision, co-workers and ususal work situations; and [d]ealing with changes in a routine work setting."  20 C.F.R. § 416.921(a), (b)( 3)-(6).  "The step-two severity determination is based on medical factors alone, and does not include consideration of such vocational factors as age, education, and work experience."  Langley v. Barnhart, 373 F.3d 1116, 1123 (10th Cir. 2004) (quotation omitted).  Although step two requires only a "de minimis" showing of impairment, a "claimant must show more than the mere presence of a condition or ailment."  Hinkle v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  To meet the burden, the claimant must furnish medical and other evidence supporting the claim.  See Bowen v. Yuckert, 482 U.S. 137, 146 & n.5 (1987).

When there is evidence that a claimant suffers from a mental impairment alleged to limit the ability to work, an administrative law judge must employ the Psychiatric Review Technique ("PRT") set forth in 20 C.F.R. § 416.920a to analyze the severity of the impairment.  See Cruse v. U.S. Dep't of Health & Human Servs., 49 F.3d 614, 617 (10th Cir. 1995).

> This procedure first requires the [Commissioner] to determine the presence or absence of "certain medical findings which have been found especially relevant to the ability to work," sometimes referred to as the "Part A" criteria. The [Commissioner] must then evaluate the degree of functional loss resulting from the impairment, using the "Part B" criteria.

Id. (citations omitted); see also 20 C.F.R. § 416.920a(b)-(d).  If, using the technique, the claimant's Part B degree of limitation in three functional areas is rated as "none" or "mild" and no episodes of decompensation are present, the administrative law judge "will generally

conclude that [the] impairment[] is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in [the] ability to do basic work activities." 20 C.F.R. § 416.920a(d)(1).

The majority of treatment records relating to Plaintiff's depression were generated in 2000 - well before the 2003 alleged onset date - as the Commissioner argues. Relying upon Branum v. Barnhart, 385 F.3d 1268, 1271 (10th Cir. 2004), the Commissioner suggests that the relevant time period for evaluating Plaintiff's claims began on March 25, 2002, approximately one year prior to the date he filed a claim a claim for benefits. Response Brief, pp. 4-5 n.2. According to the Commissioner, the administrative law judge had no obligation to consider records generated prior to March 25, 2002. However, this position is unsound. For one, Branum does not, as the Commissioner implies, indicate that the evidentiary time period relevant to a claim dates back only one year prior to the alleged onset date. Branum concerns an administrative law judge's duty to develop the administrative record by investigating the claimant's "complete medical history" which is defined by 20 C.F.R. § 416.912(d) as "at least the 12 months preceding the month in which [the claimant] file[s] [an] application." Instead, by statute, regulation, and case law, an administrative law judge is required to consider all evidence available in a claimant's case record. See 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 416.927(d); see also Hamlin, 365 F.3d at 1223 n.15 (noting that medical reports predating the period at issue "are nonetheless part of [the claimant's] case record, and should have been considered by the [administrative law judge]."); Lackey v. Barnhart, No. 04-7041, 127 Fed. Appx. 455, 458 (10th Cir. April 5,

8

2005) (rejecting argument that "medical reports prior to the operative onset date are categorically irrelevant."). Thus, contrary to the Commissioner's position, all of the mental health treatment records contained in Plaintiff's administrative file should have been considered.

Turning to those records, they indicate Plaintiff requested voluntary hospitalization for suicidal ideation on February 24, 1999. Tr. 243. He was diagnosed with major depressive disorder, recurrent, severe without psychotic features. Tr. 241-43. From October 1999 through August 2000, Plaintiff obtained mental health treatment, consisting of medication and therapy, through the Citizen Potawatomi Nation Health Services, and was diagnosed with major depression, intermittent explosive disorder, and polysubstance abuse in remission. Tr. 219-26, 230-36, 238-39. Plaintiff's condition improved such that his diagnosed conditions were noted to be in remission or partial remission as of August 2000. Tr. 217. Plaintiff's medication and therapy treatment continued through September of 2000. Tr. 211-14. Plaintiff missed several appointments in October of 2000, Tr. 201-203, and returned to his mental health providers on November 14, 2000. Tr. 198. At this appointment, he reported doing very well with his medication regime and appeared calm, quiet and "happy." Tr. 198. Plaintiff ceased coming to his appointments in December 2000, and instead called for prescription refills from January through May 2001. Tr. 183-94.

In January 2003, Plaintiff, complaining of insomnia, requested a psychiatric consult, but reported his depression had "lifted" approximately two and a half years ago after the birth of his first grandson. Tr. 140. A sleep study predating his psychiatric consultation indicated

Plaintiff suffered from obstructive sleep apnea.  Tr. 138.  At his psychiatric consultation in

February 2003, Dr. Robert Ashley diagnosed Plaintiff with insomnia, prescribed Serzone to

assist with his sleeping, and assessed Plaintiff's GAF at 75.[3]  Tr. 133.  At a follow up

appointment scheduled two months later in April 2003, Dr. Ashley prescribed Trazodone and

assessed Plaintiff's GAF at 80.  Tr. 125.  Additionally, Plaintiff saw Dr. Ashley again in May

of 2004, stating he has been feeling "down lately," and was given a prescription for

Wellbutrin but no diagnosis was made.  Tr. 613.  On April 6, 2005, Plaintiff visited Dr.

Ashley again with complaints of feeling "down in the dumps" and irritable.  Noting that

Plaintiff had a previous depression diagnosis, Dr. Ashley listed major depressive disorder as

his diagnosis, increased Plaintiff's Risperdal dosage, and assessed his GAF at 70.  Tr. 664.

In her decision, the administrative law judge discussed a Psychiatric Review

Technique form that was in the record and which indicated Plaintiff suffers from depression

that is not severe.  Tr. 23.  She concluded Plaintiff is mildly restricted in his ability to engage

in social functioning, and had no restrictions in his ability to maintain concentration,

persistence, or pace, and does not experience episodes of decompensation.  Tr. 23.  Thus,

following 20 C.F.R. § 416.920a(d)(1), the administrative law judge concluded Plaintiff's

---

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley, 373 F.3d at 1123 n.3 (quotation, omitted).  A GAF score of 61-70 indicates "some mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well . . ." while a GAF score of 71-80 means, "[i]f symptoms are present, they are transient and expectable reactions to psychosocial stressors . . .; no more than slight impairment in social, occupational, or school functioning . . . ."  American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (Text Revision 4th ed. 2000).

depression was only a slight abnormality having such a minimal impact on Plaintiff that it did not interfere with his ability to work, and was not severe.  Tr. 23, 478-91.

    In arriving at her conclusion, the administrative law judge employed correct legal standards and her findings are supported by substantial evidence.  Though Plaintiff has received treatment for numerous other medical conditions, he has not received significant, ongoing treatment for depression since late 2000.  Plaintiff visited Dr. Ashley in 2003 with complaints of insomnia, during the same time frame where it was learned he had sleep apnea, but Dr. Ashley's records from these visits do not contain a depression diagnosis or information to support Plaintiff's claim that his mental conditions were vocationally limiting.  Tr. 125, 133, 140.  Rather, Dr. Ashley's GAF assessments of 75 and 80, if anything, indicate Plaintiff had no more than slight functional impairments, and that his depression was not a severe impairment.  When Plaintiff visited Dr. Ashley again in 2004 with depression-related complaints, his GAF score was assessed at 70, representing mild symptoms while generally functioning pretty well.   Tr. 664; American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, p. 32 (Text Revision 4th ed. 2000). Contary to Plaintiff's contentions, Dr. Ashley's records do not support a finding that Plaintiff's depression was a severe impairment.

    Significantly, there is no other evidence, and Plaintiff has pointed to none, indicating that his depression interferes with his ability to perform work activity.  To sustain the burden to prove that an impairment is severe, a claimant must do more than demonstrate its mere existence - it must be shown that the impairment has a vocationally significant effect.

Hinkle, 132 F.3d at 1352; see also 20 C.F.R. § 416.921(a).  The record does not support such an inference here.  There are no entries pertaining to impairments in Plaintiff's abilities to understand, carry out, or remember simple instructions, use judgment, respond to supervision, or deal with changes in a routine work setting.  He subjectively reported difficulty maintaining attention at the hearing, Tr. 880, but he did not make similar complaints to his mental health care providers.  See Tr. 125, 133, 140, 211-39, 613, 664.  Further, reviewing Plaintiff's mental health records, an agency physician was able to conclude that Plaintiff had only mild limitations on his ability to perform activities of daily living. Tr. 488, 490.  Upon this record, the administrative law judge could properly conclude that Plaintiff's depression was not severe.

Insofar as Plaintiff's tremors are concerned, the medical record shows he was receiving diabetic care through the Citizen Potawatomi Nation Health Services and reported to his treating physician, Dr. Misty Hsieh, in March 2004, that he was experiencing shakiness in his fingers.  Tr. 629.  Dr. Hsieh observed a very mild tremor on Plaintiff's left side.  Tr. 629.  On June 15, 2004, Plaintiff's physician noted that he was coordinated on finger to nose, but he did have a mild tremor, and the physician diagnosed essential tremor and prescribed Metroprolol.  Tr. 604.  In December 2004, Plaintiff complained of a small tremor again and his Metroprolol dosage was increased.  Tr. 725-26.  In January 2005, Plaintiff had a follow-up appointment where he reported that he continued to experience tremors.  Tr. 716.  Dr. Hsieh noted Plaintiff had symmetrical strength in bilateral upper and lower extremities, and symmetrical deep tendon reflexes that were somewhat inhibited.  Tr. 716.  She also observed

12

that Plaintiff had no intention tremor when he drew or wrote, and had no resting tremor. Tr. 716. She recommended an MRI scan of Plaintiff's head with concern for multiple sclerosis and referred him for a neurology consultation. Tr. 716.

In April 2005, Plaintiff was evaluated by Dr. Michael Merkey, a neurologist. Tr. 833. Dr. Merkey's exam revealed mild slurring of Plaintiff's speech with suggestion of mild right lower facial droop, but no other focal neurologic deficits or papilledema. Tr. 833. Dr. Merkey's impression was that Plaintiff's speech and facial weakness were caused by a left subcortical infarct that occurred approximately six months earlier. Tr. 834. He further opined that Plaintiff's complaint of mild unsteady gait, was likely due to side effects of his medication versus "previous cerebellar and/or residual effect of his previous alcohol abuse," and that his complaints of progressive memory deficits may indicate early Alzheimer's disease. Tr. 834. At the hearing Plaintiff discussed his visit with Dr. Merkey and indicated he saw Dr. Merkey because of his forgetfulness, tremors, and difficulty balancing. Tr. 879.

In the decision, the administrative law judge discussed Dr. Hsieh's diagnosis of a mild tremor and remarked that his "medication list indicates that he takes medication for seizures, however his medi[c]al record does not show a diagnosis of seizures." Tr. 24. Plaintiff takes issue with this statement, but points to no records showing a diagnosis of seizures, and asserts the administrative law judge "must not have bothered to investigate the fact that the same medication claimant was taking for his tremor as diagnosed by Dr. Hsieh is also used to control seizures." Plaintiff's Opening Brief, p. 9. Plaintiff's attempt to blame the administrative law judge for any confusion caused by Plaintiff's copious medical records is

13

not well-taken given that a review of the administrative record does not indicate Plaintiff ever

asked the administrative law judge to employ the assistance of a medical expert or that he has

in fact been diagnosed with seizures.

In connection with his attack upon the administrative law judge's conclusion that his

tremors were not a severe impairment, Plaintiff contends the administrative law judge failed

to

> recognize [his] severe impairments [including tremors] as diagnosed by both
> treating and examining physicians and fails to provide an acceptable
> explanation regarding why or how she made this determination. She mentions
> only those portions of the records supporting her finding of no disability . . .
> . the record clearly indicates claimant's diagnosis of tremors and includes an
> evaluation by Dr. Merkey . . . [who] . . . note[d] objective findings from an
> examination and from an MRI.  He reports slurred speech and right facial
> weakness, mild unsteady gait and progressive memory deficit.  Therefore, to
> say that the record does not show anything is simply wrong and therefore not
> an acceptable reason for disregarding the determinations of examining and
> treating physicians.

Plaintiff's Opening Brief, p. 9.  Plaintiff's argument, at a minimum, is an exaggeration of

what the administrative law judge did and what the record actually shows, and fails to

explain how the medical record supports a finding that Plaintiff's tremor had a vocationally

significant impact such that it should have been classified as a severe impairment.  First, the

administrative law judge did acknowledge that Dr. Hsieh diagnosed Plaintiff with tremors -

she stated explicitly that "[c]laimant has a mild [tremor]." Tr. 24.  Moreover, Dr. Merkey's

findings do not carry the significance Plaintiff ascribes them.  There is no mention of any

tremor whatsoever - the only focal neurological deficit Dr. Merkey found was Plaintiff's

mildly slurred speech and suggestion of slight facial droop, which he believed were

connected to a left subcortical infarct.  Dr. Merkey also believed Plaintiff's unsteady gait had no neurological cause whatsoever and was more likely a side effect from a medication and that Plaintiff's memory loss was most likely early Alzheimer's disease.  Tr. 833-34.  Neither Dr. Hsieh nor Dr. Merkey observed significant effects from Plaintiff's tremors and Dr. Hsieh's records indicate Plaintiff retained symmetrical strength in his upper and lower extremities and symmetrical deep tendon reflexes that were somewhat inhibited while he was experiencing tremors.  She also observed that Plaintiff had no intention tremor when he writes, and had no resting tremor.  Tr. 716.  These records certainly show the existence of a tremor, but more than a mere diagnosis is required for an impairment to be considered severe because it must be shown that the impairment affects the ability to work.  Hinkle, 132 F.3d at 1352.  Thus, it is evident why the administrative law judge did not conclude Plaintiff's tremor was a severe impairment - Plaintiff produced evidence only of a tremor diagnosis, and nothing indicating it interfered with his ability to work.  Further the written decision belies Plaintiff's assertion that the administrative law judge addressed only the evidence supporting her conclusion.  The administrative law judge extensively discussed Plaintiff's medical records in connection with concluding that several of his impairments were severe, including his coronary artery disease, diabetes, sleep apnea, a history of kidney stones and renal insufficiency, and generalized joint disease.  Tr. 22-24.  Accordingly, Plaintiff's first point of error presents no meritorious ground for remand.

### B.    Residual Functional Capacity Finding

As his second claim on appeal, Plaintiff contends the administrative law judge's

residual functional capacity assessment did not account for all of his mental and physical limitations.  Plaintiff's Opening Brief, p. 10.  He contends the administrative law judge should have included limitations relating to his depression and tremors.  Id. at 11.  Plaintiff also maintains the administrative law judge did not, but should have, included limitations attributable to his sleep apnea, and that the administrative law judge's finding that he can perform light work with certain restrictions is incompatible with his coronary artery disease and generalized degenerative joint disease. Id. at 12-13.

In response, the Commissioner contends first that the administrative law judge's residual functional capacity finding need not have included limitations stemming from Plaintiff's depression and tremors because she concluded they were not severe impairments. Response Brief, p. 8.  As to the remainder of Plaintiff's claims, the Commissioner addresses them by discussing entries in Plaintiff's medical file which support the administrative law judge's conclusion that Plaintiff could perform light work with several restrictions.  Id. at 8-11.  The Commissioner asserts that the residual functional capacity assessment does take Plaintiff's coronary artery disease and degenerative joint disease into consideration, and that the medical record does not support specific restrictions related to Plaintiff's sleep apnea. Id. at 11.

Part of the administrative law judge's analytical task is to determine a claimant's residual functional capacity, defined as what the claimant can still do despite his limitations. 20 C.F.R. § 416.945(a).  The administrative law judge must make specific and detailed predicate findings and include a sufficient narrative discussion concerning the claimant's

residual functional capacity.  Social Security Ruling 96-8p, 1996 WL 374184, at *7 (stating that the residual functional capacity assessment must include a narrative discussion describing how the evidence supports each conclusion, a thorough discussion and analysis of the objective medical and other evidence, and include a discussion of why reported symptom-related functional limitations can or cannot reasonably be accepted as consistent with the medical evidence); see also Winfrey v. Chater, 92 F.3d 1017, 1023-24 (10th Cir.1996) (describing the administrative law judge's responsibilities in assessing the residual functional capacity at step four).

Before addressing Plaintiff's argument, the Court notes that the Commissioner's contention that the administrative law judge had no obligation to consider Plaintiff's depression and tremors in connection with making her residual functional capacity finding is contrary to Agency rulings and regulations.  Social Security Ruling 96-8p explains that a residual functional capacity finding is "an administrative assessment of the extent to which an individual's *medically determinable impairment(s)*, including any related symptoms, . . . may cause . . . limitations or restrictions that may affect his or her capacity to do work-related . . . activities." Social Security Ruling 96-8p, 1996 WL 374184, at *2 (emphasis supplied).  More directly on point however, applicable regulations provide that the Commissioner "will assess [the claimant's] residual functional capacity based on all the relevant evidence in [the claimant's] case record," and  "will consider the limiting effects of all [the claimant's] impairment(s), *even those that are not severe*, in determining [the claimant's] residual functional capacity."  20 C.F.R. § 416.945(a), (e) (emphasis supplied).

17

Social Security Ruling 96-8p elaborates further upon this regulation by noting, "[w]hile a 'not severe' impairment[] standing alone may not significantly limit an individual's ability to do basic work activities, it may–when considered with limitations or restrictions due to other impairments–be critical to the outcome of a claim." Social Security Ruling 96-8p, 1996 WL 374184, at *5. Thus, contrary to the Commissioner's contention here, the administrative law judge was required to consider evidence of any limitations occasioned by Plaintiff's depression and tremors in making her residual functional capacity finding.

As the Commissioner argues though, the administrative law judge's residual functional capacity finding is supported by substantial evidence that was adequately discussed in the decision.  After discussing the medical and other evidence pertinent to Plaintiff's claim, the administrative law judge concluded that Plaintiff had the residual functional capacity to perform a wide range of light exertional activity.  She further opined Plaintiff is precluded from performing a full range of light work by his need to avoid more than occasional climbing, balancing, kneeling, crouching, and crawling. Tr. 24-25.  She also found that Plaintiff should avoid unprotected heights, hazardous machinery, commercial driving, and that he is also limited in his ability to engage in more than occasional overhead reaching with his right upper extremity.  Tr. 25.

Plaintiff complains that the administrative law judge should have assessed specific limitations relating to his depression and tremors, particularly in light of Dr. Merkey's findings.  Plaintiff's Opening Brief, pp. 12-13.  However, as discussed at length in connection with Plaintiff's first claim, the records pertaining to Plaintiff's tremor do not

18

indicate it resulted in any specific limitations on Plaintiff's ability to perform work-related activities. See Tr. 833-34. The records from Plaintiff's mental health providers, especially the more recent records, did not indicate he had difficulty with performing mental work-related activities such as maintaining concentration, persistence or pace. Tr. 488. Dr. Merkey found no evidence of neurological deficits aside from Plaintiff's mildly slurred speech. Tr. 833. Further, to the extent Plaintiff contends Dr. Merkey is a treating physician whose records were given improper weight, see Plaintiff's Opening Brief, p. 12, it is noted that Plaintiff saw Dr. Merkey only once for a neurologic consultation; a single contact is generally insufficient to establish the existence of a treating physician relationship. See 20 C.F.R. § 416.902 (defining a treating source as a provider with "an ongoing treatment relationship" with the claimant).

Plaintiff also maintains that the residual functional capacity finding is deficient because it does not contain limitations accounting for his sleep apnea. Without citation to any record supporting his contention, Plaintiff argues "[c]hronic fatigue and diminished concentration should have ben included as the result of claimant's sleep apnea." Plaintiff's Opening Brief, p. 12. However, records pertaining to Plaintiff's sleep apnea do not support the limitations Plaintiff suggests should flow from the condition. Indeed, Dr. Mark Fixley, who provided the majority of care for Plaintiff's sleep apnea, noted that Plaintiff experienced no symptoms of narcolepsy or cataplexy and did not document any complaints from Plaintiff that he experienced daytime fatigue or a diminished ability to concentrate. Tr. 119, 439, 467. Plaintiff did complain of insomnia and difficulty sleeping, but he was given prescriptions for

Trazadone and Mirapex to assist with his sleeping and reported experiencing relief.  Tr. 125, 127, 439.

Additionally, Plaintiff complains that his coronary artery disease and generalized degenerative joint disease are incompatible with the finding that he can perform light work which requires standing and/or walking for about six hours in an eight hour work day. Plaintiff's Opening Brief, pp. 12-13.  Without pointing to a specific record, Plaintiff contends there are treatment notes demonstrating that he experienced chest pain upon exertion.  Id. Additionally, Plaintiff discusses the findings of Dr. Vallis Anthony, a consultative examiner, as evidence that his degenerative joint disease and pulmonary functioning render him incapable of performing light work.  Id. at 13.

Addressing Plaintiff's complaints about his generalized degenerative joint disease first, the administrative law judge discussed the findings of Dr. Anthony's consultative examination, including his finding that Plaintiff had decreased range of motion in his shoulder with marked crepitation, and severe crepitation in his knees even though he retained a full range of motion.  Tr. 23.  Although the administrative law judge concluded Plaintiff could perform light work, she reduced his ability to perform the full range of light work with postural restrictions to no more than occasional climbing, balancing, kneeling, crouching, and crawling, and found he was limited in his ability to engage in more than occasional overhead reaching with his right upper extremity.  Tr. 24-25.  Clearly, the administrative law judge placed these restrictions on Plaintiff's ability to perform light work to account for his generalized degenerative joint disease.  Dr. Lise Mungul, a medical consultant who

20

completed a Residual Functional Capacity Assessment form in connection with evaluating Plaintiff's claims, made note of Dr. Anthony's findings and identified them as the basis for also concluding that Plaintiff should be limited to no more than occasional postural maneuvering.  Tr. 494.

Similarly, the limitation of Plaintiff to light exertional work takes into account limitations occasioned by his coronary artery disease.  After reviewing Plaintiff's medical records, Dr. Mungul suggested limitations consistent with the administrative law judge's conclusion that Plaintiff could perform light work, specifically that he could lift 20 pounds occasionally, ten pounds frequently, stand and/or walk for six hours in an eight hour work day, and push or pull unlimitedly.  Tr. 493.  In making that determination Dr. Mungul acknowledged that Plaintiff had coronary artery disease that was treated with a stent, and chest pain for which he could obtain relief with rest.  Tr. 493.  Other records in Plaintiff's medical file support Dr. Mungul's conclusion and the administrative law judge's finding. Specifically, in March 2005, Plaintiff underwent a stress perfusion study related to his complaints of chest discomfort. Tr. 759-762.  During the study, Plaintiff performed low level exercise and experienced no AV block, no chest pain, and no wheezing.   Tr. 759. Accordingly, the administrative law judge's finding that Plaintiff was capable of performing light work, reduced by several postural limitations, was consistent with the medical evidence. Plaintiff's second point of error does not necessitate a remand.

### C.    Credibility Determination

For his final claim on appeal, Plaintiff contends that the administrative law judge

21

made an improper credibility assessment.  He complains that although the administrative law judge summarized his subjective complaints, she failed to provide a "real evaluation" of those complaints in the decision, did not explain why she "completely disregard[ed]" all of his complaints, and that "[t]here is no credibility analysis included in the very brief decision submitted in this matter."  Plaintiff's Opening Brief, p. 14.

In response, the Commissioner contends that the administrative law judge's credibility analysis was sufficient and supported by the medical evidence.  Response Brief, p. 12. The Commissioner notes that the administrative law judge determined Plaintiff's subjective complaints were not credible because his daily activities were inconsistent with his allegations, and that the differences between the objective evidence and Plaintiff's subjective complaints were the basis for the administrative law judge's adverse finding.  Id. at 12-13.

The standard for evaluating the effects of symptoms such as pain, fatigue, shortness of breath, weakness, or nervousness on a claimant's ability to work is well established.  In accordance with Luna v. Bowen, 834 F.2d 161, 163-65 (10th Cir. 1987), the administrative law judge must consider (1) whether the claimant has established the existence of a medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms, (2) if so, whether there is at least a "loose nexus" between the impairment and the claimant's subjective allegations, and (3) if so, whether, considering all of the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.

When the existence of a medically determinable physical or mental impairment that

22

could reasonably be expected to produce symptoms has been established, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the claimant's ability to do basic work activities. Social Security Ruling 96-7p, 1996 WL 374186, at *1. Some factors that may be considered in assessing the credibility of a claimant's statements about the effects of symptoms include: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant receives or has received for relief of pain or other symptoms; (5) treatment, other than medication, the claimant has received for relief of pain or other symptoms; and (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms.  20 C.F.R. § 416.929(c)(3); see also Luna, 834 F.2d at 165-66; Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988) (listing other relevant factors including "frequency of medical contacts, . . . subjective measures of credibility that are peculiarly within the judgment of the [administrative law judge], the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.").

Credibility determinations are peculiarly within the province of the finder of fact, and should not be upset when they are supported by substantial evidence.  Diaz v. Sec'y of Health and Human Servs., 898 F.2d 774, 777 (10th Cir. 1990).  However, an administrative law judge must closely and affirmatively link her credibility findings to substantial evidence

as a conclusory finding is insufficient.  Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).

However, a "formalistic factor-by-factor recitation of the evidence" is not required.  Qualls

v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000).  An administrative law judge's credibility

analysis is sufficient so long as the decision sets forth the specific evidence relied upon in

making the determination.  Id.

The administrative law judge discussed the contents of Plaintiff's medical records in

her decision before undertaking the specific credibility discussion. Tr. 22-24.   As to

Plaintiff's credibility, the administrative law judge found that his allegations of disabling pain

and discomfort were not supported by facts and findings that would support the degree of

pain and discomfort alleged.  Tr. 24.  Applying the factors relevant to making a credibility

determination, she then proceeded to discuss how Plaintiff's medical records differed from

his subjective allegations. Tr. 24.  The administrative law judge's credibility discussion is

both legally and factually adequate because in evaluating the credibility of Plaintiff's

subjective complaints, the administrative law judge considered the appropriate factors and

linked her findings to specific substantial evidence in the record.

For example, the administrative law judge considered Plaintiff's ability to engage in

activities of daily living and noted that his daily activities were not significantly curtailed by

his impairments. Tr. 24.  According to Plaintiff's medical records, he babysat for his two

grandchildren during the day, just two months prior to the alleged disability onset date.  Tr.

140, 155.  At the hearing, Plaintiff testified that he can take a bus or cab for transportation

because he never learned to drive, Tr. 877, and that he does his own laundry and cooking.

24

Tr. 881.   Plaintiff also reported to a consultative examiner that he is capable of managing his activities of daily living.  Tr. 425.  The decision also shows the administrative law judge considered the location, duration, frequency, and intensity of Plaintiff's pain and other symptoms because the administrative law judge noted that Plaintiff's diabetes and recurrent urinary tract infections are well-controlled with medication, that Plaintiff does experience knee pain but retains a full range of motion, and has no neurological deficits or pulmonary problems.  Tr. 24.  In any event, the inability to work pain-free is not a sufficient basis for determining that a claimant is disabled.  See Brown v. Bowen, 801 F.2d 361, 362-63 (10th Cir. 1986).

Moreover, the administrative law judge considered whether Plaintiff experienced limiting side effects from his medications and remarked that the medical record did not support such a finding.  Tr. 24.  Finally, the administrative law judge noted that Plaintiff continued to smoke cigarettes despite being repeatedly urged by his physicians to quit.  Tr. 24, 127, 131, 441, 723, 737 .  A claimant's failure to follow his physician's orders is a factor relevant to making a credibility determination.  Sims v. Apfel, No. 98-7078, 1999 WL 55334, at * 3 (10th Cir. Feb. 8, 1999) (citing Luna v. Bowen, 834 F.2d at 165).

Plaintiff complains that the administrative law judge's credibility analysis contains errors and misstatements about the evidence in the record.  However, Plaintiff does not explain what portions of the analysis contain errors which make this particular complaint unreviewable. Plaintiff's Opening Brief, p. 14.  Plaintiff's contentions that the administrative law judge completely disregarded his complaints and engaged in no credibility analysis

whatsoever are also unsubstantiated because, as explained, the credibility discussion contains a comparison of Plaintiff's complaints to the medical evidence and links the administrative law judge's findings to evidence in the record. Tr. 24.  After considering the medical records and listening to Plaintiff's testimony at the hearing, the administrative law judge made an adverse credibility finding which is entitled to deference on judicial review.  Given the foregoing, Plaintiff's final point of error does not necessitate a remand.

## CONCLUSION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the administrative law judge and the pleadings and briefs of the parties, the Court finds that the decision of the Commissioner applied correct legal standards and is supported by substantial evidence.  Accordingly, the decision is affirmed.

**DATED this 15th day of August, 2008.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE